Our first case this morning is GINGERY v. TREASURY. Mr. Hung? May it please the Court. Richard Hung of Morrison & Forster, Pro Bono Counsel for Mr. GINGERY. This appeal concerns Mr. GINGERY's application for a position as a contact representative with the IRS in January of 2008, and Treasury's subsequent decision not to hire him. In the process of declining to hire Mr. GINGERY, Treasury violated several of Mr. GINGERY's preference rights as a disabled veteran under the VEOA statute. First, Treasury removed Mr. GINGERY from consideration for the position before OPM had actually ruled on the request. Under Section 3318 and also under Regulation 332-406, OPM was required to have sustained an objection before Treasury removed him from that position. What remedy exactly is it that we can give him at this point? The remedy, Your Honor, would be to reconstruct, would be to vacate the decision, remand it back to the Board, and have them reconstruct the process. But he's already, he's already, the passover request has already been granted because he failed the TAP, so what do we do? He's supposed to get to take it again? No. As part of reconstruction, you would return the applicant to the status quo ante. In other words, we would determine the point in time at which he was supposed, his rights would have been honored, and that would have been April of 2008, roughly. So we would resubmit the passover request at that point, based on the facts which were known at that time. And the facts at that time, for example, did not include any knowledge of the pending suitability request. So it would be a different OPM passover request submitted to OPM. So you're saying we should submit a passover request to OPM based solely on the qualifications-based request? That's exactly right. And ignore his criminal record? That's correct. If, in fact, that is what Treasury wanted to do. On the other hand, Treasury could relook at the process in connection with the Board and decide that instead of resubmitting a passover request, they wanted to hire him, as an example. Okay. But weren't they submitted separately, the two? They were submitted separately. They were both submitted on the same day, August 28, 2008. But when they were submitted, they cross-referenced each other. And beyond that, the qualifications passover request was submitted well after it should have been submitted. It was submitted on August 28, 2008, which was, depending on how you count it, somewhere between four and five months after they filled all the positions. Okay. So you think the cross-reference somehow prejudiced OPM's consideration of the passover request on the qualifications-based issue? I certainly think so. In fact, it's the very last line. If you look at the passover request, the qualifications passover request, there's a reference to the fact that there is a pending suitability request pending before OPM. Okay. One more question. I'm sorry. Sure. No problem. What about the April 18 email? I think it was the 18th. April 9th. April 9th. Not the one that said, you passed the tabular out of the process, but the other one that said, we're going to seek a passover request. He was told that in April, correct? He was told that in April, and that's an interesting fact to point to. The reason I say this is that is one of, that's potentially the only fact that demonstrates that Treasury, as of any time before August of 2008, was still considering Mr. Gingrey for the position, something that I believe they noted at page roughly 25 of the red brief. They referred to the fact that you should be, the panel should be looking at the record as a whole to determine whether they were still considering him for the position. We have the April 9th email telling him that he's withdrawn. We have the April 14th training session, which the record refers to. He was invited to attend. We have the RQ appearance in the record before the passover request is submitted, referring to the fact that he, that the objection has already been sustained. So, there are... This, this came in the middle, right, before the 14th. Yes. So, I mean, I'm not sure why the 14th is relevant if on the 11th he was told they were seeking a passover request. You're right. He was told on the, he was told that they would be seeking a passover request. But then if you look at everything that happens after that point, there's five or six facts confirming that they, although they stated they would be seeking a passover request, in fact, by that point, they had already decided to pass him over. Fact upon fact upon fact. Okay. The board found credible the agency's certification that it held a position open for him. How do you deal with that particular finding? So, the issue of a holdover under 332-406-D, that's an issue of loss. The real issue is whether by Treasury stating that there is a, quote-unquote, continual need for the position, and that, quote-unquote, they effectually held open a position, that's equivalent to actually holding over a position. And we submit it isn't. In the patent realm, this isn't the doctrine of equivalence. If they said they held it over, what more do they have to say to convince you? It's, if you think about the timing of when they're saying that they held this over, the first time you see this is sometime in August of 2008. And we know that before that point, 33 positions had been filled, 33, all 25 positions had been filled by this point. So, it's a promise that, it's sort of an empty promise because we don't know, in fact, whether you could hire. But the board cited precisely to that fact and said that because they went beyond the 25 positions, it's very credible that they were holding things open beyond then. So, when one thinks about holding, holding really means to reserve. And if you have 25 positions in the vacancy announcement, it's one thing to say that if they'd hit 24 positions, and they could have filled them for that 25th position, then they were holding a position open for them. Treasury is treating the vacancy announcement like a balloon. They can just continually add people and expand the announcement. But once 25 was hit, whether that was on April 14, 2008, or August 29, 2008, certainly by September 3, 2008, five days after they submitted the request, all of the positions were filled. There's nothing to be held. But is the, now we're getting into claim construction here, but is the word, I mean, is the holding open or reserving, is that a factual determination or is that a legal determination? It's a legal determination. It really, what does hold mean? And I think if you take a look at the red brief, you look at the government's briefing, it's clear that they aren't, they're acknowledging that one has to construe hold as to cover effectually holding. Potentially holding. Perspectively holding. As opposed to holding today. And what the, what 332D is saying is that you're holding today. Because it's referring to the fact that if you want to hire someone instead of the preference eligible, you in fact must hold a position open. Not be able to offer in the future, hold today. Mr. Hung, is there anything to indicate that, you know, had the government waited to remove Mr. Gingrey from consideration until after the OPM Passover determination had been made, that the outcome would have been any different here? I'm not aware of a fact. In other words, if they complied by the rules, they would have complied by the rules. Obviously, this goes to the question, it goes to the government's argument that this is harmless. Even if there was an error, the error is harmless. This is nothing to suggest that I can see that had the government waited to remove him from consideration until after the OPM decision had been actually made, that the outcome would have been any different than it is right now. So this goes back to my position, Judge Lynn, about returning the applicant to the status quo on reconstruction. So what we know is that the Passover request was submitted well after. It's submitted at the end of August 2008, long after these violations have occurred. Yeah, but what I'm asking is that there was an OPM determination made at the time based on whatever facts and circumstances were there, and would the outcome have been any different had he been not removed from consideration up to that point and then following the determination, the Passover determination, removed? If his rights had not been violated up until August 2008, you're correct. They followed the procedure, kept him on the list of eligibles, held his position open for him, waited until the request had been sustained, and then removed him. That all would have made sense. Then why is this error, if there is indeed an error, not harmless? The reason why it's not harmless is that's not actually what happened. Those aren't the facts as actually occurred. What actually occurred is they filled the positions somewhere between April and August of 2008, such that the positions had already been removed. No position was held open for him. And so had they wanted to follow the procedure and submit the Passover request at the right time, the right time would have been April or May or maybe even June 2008. They would not have had the facts relating to his trespassing misdemeanor, as an example. So if we were to submit, I guess, a clean qualifications-based request, if they were to submit that, do you have any reason to believe that OPM has ever denied a Passover request for somebody who failed the TAP? Has OPM ever denied a Passover request for someone who has failed the TAP? Yes, there is the Lodge case. In the very first Lodge decision, three of which are cited, in the very first Lodge decision, OPM returns does not rule on the Passover request because it questions the agency as to whether, in fact, the application of TAP is correct as a qualification. But since that point, it's now been satisfied with the use of TAP, correct? Whether we like it or not, it's a question of whether the agency and OPM are satisfied with it. Yes. So the only example I'm aware of, actually, Judge O'Malley, is in this case, actually, the fact that OPM ultimately issued a ruling that refers to the TAP test. I'm not aware of an OPM decision sustaining the use of TAP otherwise. And for that reason, we believe the Court shouldn't focus on OPM's decision relating to TAP in this case. But in Lodge, the question was whether or not TAP is relevant to the position. That's correct. Is there any question as to whether TAP is relevant to this position? Yes. Before the Board, Mr. Gingery argued quite vehemently that TAP was incorrectly applied for two reasons. First of all, it was applied after the certificate had been created. And secondly, even assuming that one could apply TAP before the certificate was created, it didn't accurately address the qualifications because somewhere between 23 and 26 qualifications were listed, and this was just one of them for the contact representative position. So the issue being is that undue weight is being given to TAP based on its potential relevance to one of multiple factors. I see that I'm into my rebuttal time. If I could reserve that time. Thank you, Mr. Kahn. Ms. Goodman? Good morning. May it please the Court. The decision of the MSPB should be affirmed because it correctly held that the agency did not violate a Veterans Preference Statute, and even if this Court concludes that the agency did violate a Veterans Preference Statute, any violation was harmless in light of OPM's sustaining of the Passover request. Can we read harmless error into statutory requirements? In this case, just like in the Lodge case, essentially what happened was the Passover request being granted following any alleged violation of a Veterans Preference Statute would then moot the violation because if this Court were to hold that a Veterans Preference Statute had been violated in remand for reconstruction, part of reconstruction could be seeking a Passover request. So in that way, the error would be harmless. How do you respond to your opposing counsel's argument that, in fact, the new Passover request would be different than the original Passover request because it wouldn't contain the suitability-based information? Your Honor, the agency submitted two separate Passover requests. One said that Mr. Gingrey failed the tap, and yes, the very last line of that Passover request does say the agency has also submitted a suitability Passover request. The reason for that statement is to inform OPM that, in fact, there are two pending because in response, what OPM did was issue a notice, which is at page 580 of the record, which says in light of your pending qualifications-based Passover request, we are not going to rule on your suitability-based Passover request. So it simply avoids OPM acting on two separate Passover requests at the same time. But there's no doubt that they knew that there were separate issues that you were pushing for Passover requests. Correct, Your Honor. There is no question that they did know. And why did you wait? There was no reason to wait for that suitability-based information, I mean, unless I'm sure counsel would argue unless you wanted to taint the other inquiry. I mean, there was no need to wait. Why didn't you just submit it? Honestly, it's not clear from the record, Your Honor. The agency did wait four months. However, it is clear that as soon as the agency learned that Mr. Gingrey failed the TAP, it did begin preparing the Passover request. The office in Cincinnati did prepare a Passover request, and that's clear within two days after they learned that Mr. Gingrey had failed the TAP. They then forwarded the Passover request, and presumably it seems that the agency, yes, did wait until it had the fingerprint information as well before it proceeded with seeking a Passover. But it is not clear from the record why there was a delay, but it is clear from the record that the agency did immediately begin taking steps to prepare that Passover request. Is the agency consistent with respect to its application of TAP as absolutely disqualifying for all veterans? The job posting itself indicates that a veteran, I'm sorry, that any applicant must pass the TAP in order to be considered for the position. But has the agency consistently enforced that against veterans? In this case, Your Honor, I don't know about consistently across the board for a contact representative position. But in this case, the job posting, which is at page 143 of the record, does say passing the TAP is a requirement for this position. So all applicants who were ultimately offered a position had to pass the TAP in order to be appointed to the position. So all of those appointed on this record had passed the TAP, is that right? Yes, Your Honor, that's my understanding. That is not from the record, but that is my understanding. The job posting does require that. I mean, what happened here is the same situation as in Abel or other cases, where the agency looks at the application. They look at the resumes submitted. They look at the applications. Based on that, they determine what candidates are eligible for the job, and they create a certificate of eligibles, the idea being that from that certificate of eligibles, the agency is then going to select those people that it wants to appoint to the position. In the interim, just like in Abel where the agency said we have our certificate of eligibles, now we want to bring these people in for an interview to determine which of these applicants we really want to hire. Here, the agency said we are going to select certain applicants from the certificate of eligibles to take the TAP exam, Mr. Gingrey being one of them, because, yes, he was, as a veteran, put at the top of the certificate of eligibles in Category A. So the agency then offers him the opportunity to take the TAP, which is consistent with the job posting, which says that in the event that you are determined eligible, some applicants will then be offered an opportunity to take the TAP exam. That's also conveyed to Mr. Gingrey when he's placed on the certificate of eligibles. I know we can't question the TAP, but isn't it true that the TAP system is incredibly subjective, the way someone is graded on whether they pass it or not? The TAP is not, I mean, it is scored, but it is scored. There is like a rubric that scores how they perform on the TAP, and they are given a number score and then they're also given a description of why the person scored the way that they did. So, yes, I mean, just like any exam that's given, unless it's true or false or multiple choice, there is going to be some subjectivity based on the evaluation of it. But ultimately, the report of his performance on the TAP is very clear that he failed the TAP. He was not able to locate the information that he needed. He did not reference the proper information. The TAP exam really simulates the job of a contact representative. It provides them information, it provides the applicants information, and it simulates a call that they would receive as a contact representative at the IRS. And then they are scored on that. He scored a full 10 points below. So even assuming, Your Honor's question, that perhaps there is some subjectivity, the description of the TAP and his score, a full 10 points below, makes it clear that he failed the TAP in this case. And again, as Your Honor noted, ultimately that information was provided to OPM who sustained the TAP, and the court cannot question the ultimate results of the TAP or OPM's decision to sustain the passover. In addition, opposing counsel argues that at this point there should be reconstruction and go back to the point where the agency submitted the passover request. This case is the same as in Lodge. And in Lodge what happened was the applicant or the veteran said that there was a violation because he was not appointed to a job at the point when OPM actually denied the passover request. Ultimately, while the case was pending and going through the MSPB, the agency's third passover request was sustained by OPM, and the MSPB held that the case was now moot because in light of OPM's decision to sustain the passover request, there was no more relief that the veteran was entitled to. The same is true here. Mr. Gingrey alleges that the violation occurred at the time that he was allegedly taken out of consideration for this position. And again, as shown in the record, the letter that he received was absolutely a form letter. It was sent to applicants. And he was immediately, within days, notified that the agency was aware that they had to do a passover request and they were preparing the passover request for review. And then the agency prepared the passover request. Ultimately, the passover request detailing the TAP, its relation to this position, was sustained by OPM. Would the outcome be different here if there were no continuing positions available? In other words, if the vacancy announcement was for 25 positions and those 25 positions were filled and there were no further positions that were available during the course of the OPM proceeding, would the outcome be different here? The outcome ultimately would not be different. The first decision of whether or not the agency violated a veteran's preference statute, arguably under that hypothetical, yes. There could be a violation of the veteran's preference statute if the agency did not have a position available in the event that OPM denied the passover request. However, getting into our second argument as to what he would be entitled to, there would be no difference. Because once OPM sustained the passover request, he did not have to be appointed to a position. So whether or not there was one available, again, would just be harmless error. So it seems to me if his veteran's preference rights are violated, they would be violated in both hypotheticals, both the actual facts of this case and the hypothetical I pose where there were no new positions. So the only difference, it seems to me, is your argument about, well, the outcome wouldn't be any different. There wouldn't be any harm. Well, the purpose of holding open a position is so that in the event OPM does deny the passover request, there is a position that the veteran can be appointed to. I guess what I'm really saying is it seems to me you are conceding that his veteran's preference rights were violated, just arguing that it doesn't make any difference. No, Your Honor. In this case, we are not conceding that his veteran's preference rights were violated because there was a position available for him, and the agency repeatedly stated that if OPM had denied the passover request, they would have had a contact representative position for him open, provided, albeit, that the second passover request was also denied. But there would be a position available for him. Well, under that circumstance, agencies could continually violate veterans' preference rights and then just say, but we'll create another position if we have to if for some reason we get caught, right? But that's not the concept, right? The concept is you take one of the positions that you are going to fill and you hold it. Correct, Your Honor. And you don't fill that, and you're bound not to fill that until you get a passover, because otherwise you can always fix it after the fact if your argument is available, right? Correct, Your Honor. I mean, in this instance, the agency did post for 25 positions, but what the MSPB looked at was ultimately the fact that the agency hired 33 positions, it was clear that the agency could continue to hire people over and above the amount that the posting was for. Now, the – But it seems to me that eventuality or that circumstance was not really a factor in how the agency processed the passover or the timing or anything else. It seemed to me that that was just a fortuitous circumstance that, in hindsight, allowed the agency to excuse the fact that it didn't adhere to the timing requirements of this passover. We concede, Your Honor, that yes, the 25 positions in the posting were filled, and over and above those positions were filled. But the reason for holding open a position for a veteran is in the event that OPM does deny a passover request, there needs to be someplace to put that veteran. In Lodge, what had happened in the first few decisions before ultimately OPM sustained the passover request was that OPM had actually denied a passover request. It sent one back, and then it denied one. And what the MSPB said was the violation was that upon the denial, you weren't putting the veteran into a position. So that was the problem, is that there wasn't a position available for him. Here, however, there would have been a position available for him had OPM ultimately denied the passover request. So your answer is? There's nothing to suggest that had the passover request not been granted, there's nothing to suggest that he would not have been given a position. Correct, Your Honor. There's nothing to suggest. What would have had to happen in this case was OPM would have had to deny the TAP passover request. It then would have looked at the suitability determination request. It would have had to deny that request. And then only at that point would the agency then appoint Mr. Gingrey to a position, which it had available for him in the event that both of these passover requests were denied. And so the agency did not violate a veteran's preference statute or regulation. But you're asking us to interpret the regulations and to therefore say, we're going to look and see what we think the purpose of the regulation was, and then we can not apply the clear words of the regulation? No, Your Honor. What we're asking for, Mr. Gingrey argues that this is an issue of statutory and regulatory interpretation. We maintain that this is an issue of application of lot effect. It's an arbitrary and capricious standard. And the reason for that is we don't dispute that the regulation does require the agency to hold open a position. The only issue in this case is whether the agency's actions amount to holding open a position. The agency has maintained that it had a position for him in the event that both of its passover requests had been denied. So the issue with those facts, given those facts, applying it to the requirement that a position be held open, did the agency violate his veteran's preference rights? And it did not. And, again, even in the event that this Court determines that the agency did violate a veteran's preference right, any error is harmless because ultimately OPM did sustain the TAP passover request. For these reasons, if the Court has no further questions, we respectfully request the decision of the MSPB be affirmed. Thank you, Ms. Goodman. Mr. Hung, you have three and a half minutes. Thank you. One of the lead arguments that the government makes in its opposition is that a new passover request would be moot. I guess that's one of the lead arguments. And the reason why that doesn't work is because it would be a different passover request. The government isn't denying that any new passover request that complied with regulations would need necessarily to omit any discussion of suitability. So we just don't know whether the original passover request was tainted based on the references to suitability. The government spends a lot of time referring to the 2008 Lodge decision. Lodge is distinguishable for several reasons. One, we simply don't know in Lodge whether, in fact, a position was held open. If a position was held open in Lodge and a request was subsequently submitted to OPM, that may have been a valid request such that the outcome would not have changed. Here, by contrast, we know that the outcome might have changed in view of the addition of the suitability information on the passover request, which was submitted, as distinct from the one that would be submitted under reconstruction. The government spends quite a bit of time referring to the hold issue and the fact that there would have been a position for Mr. Gingrey. The reason why this doesn't work is that having a position to offer is different than holding a position. The fact that I might prospectively be able to give Mr. Gingrey a position is not the same as holding a current position open for him. And this Court's decision, I think it's Judge Clevenger's decision in Kuykendall, is instructive on this point because that's exactly what he says. Prospective relief is not the same as retroactive relief, making the veteran whole. Finally, I wanted to end by focusing on the issue of the TAP results and the TAP test itself. Mr. Gingrey is below, did challenge the appropriateness of using TAP. But he's also challenging it here, the use of TAP to basically void the certificate of eligibles, because the certificate of eligibles is supposed to be the end point in the process. You create the certificate, they're ranked, you apply the veteran's preference, and then you select from that certificate. What happened here is they created the certificate and then they used the TAP results to undo it. In any event, you have to qualify, don't you, Mr. Hung? It is correct that you do have to qualify. Your client didn't. Doesn't that end this? It doesn't end it because the current issue before the court is the application of TAP after the certificate was created. He still has to qualify, doesn't he? That's correct. And his listing- Now, if we had complied with your request and sent this back somehow, what relevance would the subsequent information that came out about unsuitable behavior in other contexts? None of it would be relevant. None of it would be relevant because- How could that be ignored? It's known now, and they have to review the qualifications of this candidate. In this court's case law, when one reconstructs, one goes way back in time and pretends. It really is hypothetical. One pretends that- And so can they pretend to find the information again and then disqualify him for criminal behavior? No, they can't. And the reason why they can't- So, in other words, a slight mistake would change his record? A slight- In terms of the suitability request, that request was never ruled on. So, in fact, we don't know whether, in fact, if that information were submitted as part of a new pass-over request, whether, in fact, that would be sustained or not. So it's only the issue of the qualifications. Thank you, Mr. Hung. Thank you.